IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BENJAMIN GARNER AND DEBORAH SCHICK,** individually and on behalf of all similarly situated individuals**,** | )<br>)<br>) Case No. 1:20-cv-04693<br>) |
| **Plaintiffs,** | ) **JURY TRIAL DEMANDED**<br>) |
| v. | )<br>) |
| **ALLSTATE INSURANCE COMPANY,** an Illinois insurance company, | )<br>)<br>) |
| **Defendant.** | ) |

## CLASS ACTION COMPLAINT

Plaintiffs Benjamin Garner ("Garner") and Deborah Schick ("Schick") (collectively "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Allstate Insurance Company ("Allstate" or "Defendant") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA" or the "Act"): (1) to stop Defendant's practice of placing calls—or its practice of having others place calls on its behalf— using an "automatic telephone dialing system" and/or using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express written consent; (2) to stop its practice of placing calls—or its practice of having others acting on its behalf placing calls—to persons who have registered their phone numbers on the National Do Not Call Registry ("National DNC Registry") without their prior express written consent; (3) for statutory damages for all calls that it made, or had made on its behalf, in violation of the TCPA; and (4) to obtain redress for all persons injured by Defendant's or its agents' conduct.

Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Defendant Allstate is a well-known insurance agency that offers insurance policies to consumers nationwide.

2. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and generate leads for its services, Allstate conducted (and continues to conduct), through agents working on its behalf, a wide-scale telemarketing campaign that features the repeated making of unsolicited, autodialed phone calls to consumers' phones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

3. Allstate's agents, acting on Allstate's behalf, called persons using an automatic telephone dialing system ("ATDS") and repeatedly called persons who had registered their phone numbers on the National DNC Registry.

4. By making the calls at issue in this Complaint, Defendant and its agents caused Plaintiffs and the other members of the Classes actual harm and cognizable legal injury, including: (a) the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, (b) wear and tear on their telephones, (c) loss of battery life, (d) loss of value realized for monies consumers paid to their carriers for the receipt of such calls, and (e) the diminished use, enjoyment, value, and utility of their telephone plans.

2

5. Furthermore, Defendant and its agents made the calls knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their phones, including the related data, apps, software, and hardware components.

6. The TCPA was enacted to protect consumers from calls like those alleged and described herein. Businesses like Allstate must obtain prior express written consent from consumers prior to calling (or having agents place calls on its behalf). Here Allstate and its agents failed to obtain any such prior express consent. Allstate must also refrain from repeatedly calling persons who've listed their phone numbers on the National DNC Registry. Here Allstate's agents ignore such prohibitions and make repeated calls on Allstate's behalf and for Allstate's benefit.

7. In response to Defendant's unlawful conduct, Plaintiffs bring this action seeking injunctive relief requiring Defendant to cease all unlawful telephone calling activities to telephones without first obtaining prior express consent required by the TCPA, as well as an award of statutory damages to the members of the Classes under the TCPA, together with costs, pre and post-judgment interest, and reasonable attorneys' fees to be paid out of any fund created for the benefit of the Class.

**PARTIES**

8. Plaintiff Benjamin Garner is a natural person and resident of Pearland, Texas.

9. Plaintiff Deborah Schick is a natural person and resident of Scottsdale, Arizona.

10. Allstate is an insurance company in Illinois and is registered with the Illinois Department of Insurance. Defendant's principal place of business is located at 2775 Sanders Road, Northbrook Illinois 60062, which is located in this District.

11. The exact identity of Defendant's agents who made the calls at issue herein on Defendant's behalf and for Defendant's benefit are unknown at this time. Plaintiff anticipates needing to amend this Complaint to add such agents when Defendant identifies them.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.* ("CAFA") because there are over 100 class members, there is minimal diversity, and there is over $5,000,000 at issue when the claims of the Classed are aggregated. None of the exceptions to CAFA applies.

13. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and conducts a significant amount of business in this District. The decision to make and to continue to make unsolicited prerecorded calls directed towards consumers and telephone users was made in this District, and the wrongful conduct giving rise to this case occurred in and emanated from this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District and conducts a significant amount of business within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District and received the calls at issue in this District.

## COMMON FACTUAL ALLEGATIONS

15. In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase their customer base.

4

16. Widespread telemarketing is a primary method by which Defendant, through its agents, recruits new customers.

17. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

18. In violation of this rule, Allstate and its agents fail to obtain any prior express written consent to make autodialed telemarketing calls to telephone numbers on Defendant's behalf.

19. In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA.

20. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

21. Allstate, through its agents, further violated the TCPA by making repeated unsolicited telemarketing calls to persons who had registered their phone numbers on the National DNC Registry.

22. At all times material to this Complaint, Allstate was and remained fully aware that unsolicited telemarketing calls were made and continue to be made to consumers' telephones through its own efforts and the efforts of its agents. Allstate had notice of consumer complaints and other information that put it on notice that its agents were violating the TCPA on its behalf. Allstate knew of its agents' TCPA violations and refused to stop or correct such conduct. The calls were made with Allstate's knowledge and approval, and Allstate accepted the benefits of the calls.

23. All calls were made on behalf of, and for the benefit of, Allstate. Allstate received the benefits of the calls and ratified the calls.

24. Defendant Allstate and its agents knowingly made (and continue to make) unsolicited telemarketing calls without the prior express written consent of the call recipients. In so doing, Defendant has not only invaded the personal privacy of Plaintiffs and members of the alleged Classes, it also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF GARNER

25. Plaintiff Garner is the owner and primary user of a cellular telephone number with the last four digits ending in 7640.

26. On February 2, 2016, Plaintiff Garner registered his telephone number with the last four digits ending in 7640 on the National DNC Registry.

27. Notwithstanding this registration, on June 4, 2019, Plaintiff Garner received a call on his phone number ending in 7640 that appeared to be from 817-555-0000. The caller indicated he was from Allstate.

28. On June 5, 2019, Plaintiff Garner received a call that again appeared to be from 817-555-0000. The caller again indicated he was calling from Allstate.

6

29. On June 6, 2019, Plaintiff Garner received a call that again appeared to be from 817-555-0000. The caller again indicated he was calling from Allstate.

30. On June 10, 2019, Plaintiff Garner received a call that appeared to be from 214-555-0000. The caller again indicated he was calling from Allstate. The caller indicated he would send Plaintiff an email but never sent one.

31. On July 24, 2019, Garner received a call from 214-369-3757. The callers indicated they were calling from Allstate.

32. Garner never gave Allstate or any of its agents prior express consent or permission to call him.

33. These calls were annoying and harassing and invaded Plaintiff's privacy.

34. The calls were made with an ATDS.

## FACTS SPECIFIC TO PLAINTIFF DEBORAH SCHICK

35. On April 11, 2004, Plaintiff or her designee registered her cellphone number with the last 4 digits ending in 6443 on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on her phone.

36. On June 10, 2017, Plaintiff or her designee registered her cellphone number with the last 4 digits ending in 6535 on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on her phone.

37. On August 7, 2019 Plaintiff received a call on her 6443 number from 925-290-1677. The caller indicated they were calling from Allstate.

38. On August 21, 2019, Plaintiff received a second call on her 6443 number from 925-204-7767. The caller transferred Plaintiff to Allstate.

39. On August 26, 2019, Plaintiff received a third call on her 6443 number from 925-445-2086. The caller transferred Plaintiff to Allstate.

40. Also on August 26, 2019, Plaintiff received a call on her 6535 number from 925-840-1682. The caller, who may have stated he was affiliated with Solidquote, transferred Plaintiff to Allstate.

41. On September 16, 2019, Plaintiff received a fourth call on her 6443 number from 925-735-7741. After mentioning "US Auto" and asking if Plaintiff was interested in insurance, the caller transferred Plaintiff to Allstate.

42. On December 18, 2019, Plaintiff received a second call on her 6535 number from 925-686-4823. The caller who may have stated he was affiliated with Solidquote, attempted to transfer Plaintiff to Allstate.

43. Plaintiff Schick never gave Allstate or any of its agents, whether going by the name "Solidquote", "US Auto Group", or any other Allstate agents, prior express consent to call her at all.

44. These calls were annoying and harassing and invaded Plaintiff's privacy.

45. The calls were made with an ATDS.

46. In order to redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals alleged herein, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited calls to residential telephones.

47. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unlawful telemarketing activities and an award of statutory damages to the class members, together with costs, pre- and post-judgment interest, and reasonable attorneys' fees.

8

## CLASS ALLEGATIONS

48. Plaintiffs bring this action in accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seeks certification of the following two Classes:

**No Consent Class:** All persons in the United States from four years prior to the filing of the instant action through the date notice is sent to the Class (1) to whom Allstate (or an agent acting on behalf of Allstate) made calls, (2) to the person's cellphone number, (3) using the same equipment that was used to call the Plaintiffs, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiffs.

**DNC Registry Class:** All persons in the United States from four years prior to the filing of the instant action through the date notice is disseminated to the Class (1) who Allstate or an agent acting on Allstate's behalf, (2) called at least twice, (3) for the same purpose as Plaintiffs were called, (4) where the person's phone number had been registered on the National DNC Registry for at least thirty (30) days.

49. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Allstate, its subsidiaries, parents, successors, predecessors, agents, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Allstate have been fully and finally adjudicated and/or released.

50. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery, including discovery confirming the scope of the classes, the purpose of the calls, the nature of the equipment used to make the calls, the identification of any third party agents who made the offending calls, and any type of consent Defendant claims was obtained.

51. **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant or its agents acting on its behalf made unsolicited calls to thousands of

consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's and its agents' records.

52. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct constitutes a violation of the TCPA;

    (b)    whether Defendant made the calls using an ATDS;

    (c)    whether Defendant obtained prior express consent to contact any class members; and

    (d)    whether Defendant made repeated unsolicited calls to consumers who were registered on the National DNC Registry; and

    (e)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

53. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

54. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

55. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs and the No Consent Class)

56. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

57. Defendant, on its own or through its agents acting on its behalf, made calls to telephone numbers belonging to Plaintiffs and other members of the No Consent Class without first obtaining prior express written consent to receive such calls.

58. Defendant made the calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant or its agents, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiffs and other consumers.

59. By making the calls to Plaintiffs' cellphones and the cellphones of members of the No Consent Class without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

60. The calls were for telemarketing purposes and announced the commercial availability of Defendant's insurance policies.

61. Neither Plaintiffs nor any other member of the No Consent Class had any established business relationship with Defendant.

62. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

63. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the DNC Registry Class)**

64. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

65. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

66. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

67. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone

numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[1]

68. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

---

[1] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

69.  Allstate and its agents violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like the Plaintiffs and the DNC Registry Class members who registered their respective cellphone numbers on the National DNC Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3), yet Defendant caused them to be called multiple times during any given 12-month period.

70.  Allstate, through its agents, made multiple unsolicited telephones call to Plaintiffs and the other members of the DNC Registry Class within a 12-month period without their prior express consent to receive such calls.

71.  Plaintiffs and other members of the DNC Registry Class never provided any form of consent to receive telephone calls from Allstate or its agents, and Allstate does not have a current record of consent to place telemarketing calls to them.

72.  Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the DNC Registry Class received more than one telephone call in a 12-month period made by or on behalf of Allstate in violation of 47 C.F.R. § 64.1200, as described above.

73. As a result of Defendant's conduct as alleged herein, Plaintiffs and the DNC Registry Class members suffered actual harm and, under 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74. Defendant violated 47 C.F.R. § 64.1200(d) by failing to have a written do not call policy, by failing to train its personnel involved in telemarketing regarding the existence and use of any such do not call policy, by failing to accurately record do not call requests internally, and by calling Plaintiffs and others more than thirty (30) days after receiving a request to stop calling.

75. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the National DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs BENJAMIN GARNER and DEBORAH SCHICK, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes, and appointing their counsel as Class Counsel;

2. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

3. Treble damages in case willful or knowing violations are proven;

4. An order declaring that Defendant's actions, and the actions of its agents, as set out above, violate the TCPA;

5. An injunction requiring Defendant to cease all unsolicited calling activities to persons on the National DNC Registry, and otherwise protecting the interests of the Classes;

6. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

7. An award of pre- and post-judgment interest; and

8. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,
**BENJAMIN GARNER & DEBORAH SCHICK**,
individually and on behalf of two Classes of similarly situated individuals

Dated: August 10, 2020   By: ___/s/ Steven L. Woodrow_____
One of Plaintiff's Attorneys

Marc E. McCallister
mem@mccallisterlawgroup.com
Gary D. McCallister
gdm@mccallisterlawgroup.com
McCallister Law Group
200 North LaSalle Street, Suite 2150
Chicago, IL 60601
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiff and the Class*

*\* Pro Hac Vice Admission to Be Sought*