**IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BENJAMIN GARNER** and **DEBORAH SCHICK,** individually and on behalf of all similarly situated individuals**,**         **Plaintiffs,** <br><br> v. <br><br> **ALLSTATE INSURANCE COMPANY,** an Illinois insurance company, <br><br>         **Defendant.** | Case No. 1:20-cv-04693 <br><br> Hon. John Z. Lee <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION
TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**

**I.     INTRODUCTION**

This case challenges Defendant Allstate Insurance Company's ("Defendant" or "Allstate") serial violations of the Telephone Consumer Protection Act ("TCPA"). Specifically, Allstate, either on its own or through telemarketers acting on its behalf, places unsolicited, autodialed phone calls to consumer cell phones without obtaining prior express consent, including to those who have registered their phone numbers on the National Do Not Call Registry. Yet rather than answer the Complaint, Defendant asks the Court to dismiss Plaintiffs' autodialer claim or, in the alternative, to stay the entire case pending the Supreme Court's ruling in *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), a case concerning the definition of an automated telephone dialing system ("ATDS"). Defendant's arguments for partial dismissal fail, and a stay pending resolution of the *Duguid* case is not appropriate or supported. As explained further below, the Court should deny Allstate's motion in its entirety.

Despite Defendant's protestations, Plaintiffs Benjamin Garner ("Garner") and Deborah

Schick ("Schick") (collectively "Plaintiffs") have sufficiently pleaded the use of an autodialer to support their first cause of action and survive a motion to dismiss. Plaintiffs have not, as Allstate attempts to suggest, merely recited statutory language—the Complaint contains factual allegations about the content, context, and number of calls received that, taken as true, permit a reasonable inference that the calls were placed using an ATDS. Plaintiffs cannot be expected to prove their case at the pleadings stage, particularly when evidence of the dialing system at issue is possessed solely by Allstate or its agents.

Defendant's alternative motion to stay is similarly meritless. Allstate's assessment of the *Duguid* case is flawed because, regardless of the definition of ATDS that the Supreme Court may ultimately settle on, the true nature the dialing equipment that was used to place calls to Plaintiffs and the classes must be ascertained through discovery. Plaintiffs' ATDS claims allegations meet even a strict interpretation of the statutory definition, such that a reversal of *Duguid* would not dispose of their claim. Likewise, the factors for granting a *Landis* stay do not favor Allstate's request, and Plaintiffs would suffer prejudice if the case and all discovery were delayed. Accordingly, the Court should deny Defendant's Partial Motion to Dismiss or Stay in its entirety.

**II.     SUMMARY OF THE CLAIMS**

Plaintiffs allege that Allstate violated the TCPA by making unsolicited, autodialed calls to their cellphone and to the cellphones of a class of consumers, all of whom did not provide prior express written consent to receive such calls. (*See* Compl., dkt. 1 at ¶ 2.) Plaintiffs bring two causes of actions and seek to represent two classes of affected consumers: a "No Consent Class" and a "DNC Registry Class." (*Id.* ¶ 48.) The No Consent Class consists of all persons called by Allstate using the same dialing equipment and for whom Defendant claims it obtained consent in the same manner as it may claim to have obtained consent to call the Plaintiffs. (*Id.*) A

key component of the No Consent Class' claim is that the dialing technology used by Allstate to make the calls qualifies as an ATDS as defined in the statute—that is, equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to thereafter dial such numbers without human intervention. (*See id.* ¶¶ 20, 58.) The DNC Registry Class comprises persons who were called at least twice after their phone number had been registered on the National DNC Registry for at least thirty days. (*Id.* ¶ 48.)

Though they cannot know the precise nature of the dialing equipment used by Allstate or its telemarketers without discovery, Plaintiffs supported their claims with factual allegations that suggest the calls they received were automated. Garner received his first call from 817-555-0000 on June 4, 2019. (*Id.* ¶ 27.) He received a second call from the same number the next day on June 5, 2019, and a third call on June 6, 2019. (*Id.* ¶¶ 28–29.) He received a fourth call from a different number, 214-555-0000, on June 10, 2019, during which the caller said they would send Garner an email but never did. (*Id.* ¶ 30.) The fifth call came from 214-369-3757 on July 24, 2019. (*Id.* ¶ 31.) All five callers indicated they were calling from Allstate. (*Id.* ¶¶ 27–31.)

Schick received a total of six calls—the first came from 925-290-1677 to her 6443 number on August 7, 2019. (*Id.* ¶ 37.) She received a second call to her 6443 number from 925-204-7767 on August 21, 2019, and a third call from 925-445-2086 on August 26, 2019. (*Id.* ¶¶ 38–39.) She also received a call from 925-840-1682 to her 6535 number on August 26, 2019. (*Id.* ¶ 40.) Schick received a fourth call to her 6443 number from 925-735-7741 on September 16, 2019, and a second call to her 6535 number from 925-686-4823 on December 18, 2019. (*Id.* ¶¶ 41–42.) The first caller indicated that they were calling from Allstate, while the remaining five callers transferred or attempted to transfer Schick to an Allstate representative. (*Id.* ¶¶ 37–42.)

Plaintiffs are not Allstate customers, they do not have any relationship with Allstate, and

3

they never provided express written consent to Allstate or its telemarketers to place these calls to them. (*Id.* ¶¶ 32, 43, 61.) Based on the number and frequency of calls, the variety of phone numbers, and the lack of any relationship with Allstate, Plaintiffs alleged that the calls were made using an ATDS. (*See id.* ¶¶ 20, 34, 45, 58.)

### III. ARGUMENT

Defendant's motion advances two separate arguments: (1) Allstate claims that Plaintiffs' first cause of action should be dismissed because the Complaint supposedly "parrot[s] the language of the TCPA" and alleges the use of an ATDS "without factual support" (Def. Mot., dkt. 18, at 2); and (2) as an alternative to dismissal of the ATDS, Allstate asks the Court to stay the entire case pending the Supreme Court's ruling in *Facebook v. Duguid*, No. 19-511, 2020 WL 3865252 (July 9, 2020), which will determine whether a device that does not feature a random or sequential number generator may still be considered an ATDS if it can store and automatically dial numbers. (Dkt. 18 at 2–3.) As explained below, neither argument wins the day. Defendant's argument for dismissal overlooks the factual allegations made by Plaintiffs, which sufficiently detail the context and number of calls to permit a reasonable inference that the calls were made using an ATDS—more specific factual allegations about the dialing equipment need not be made, and, in fact, cannot be made without discovery.

As for Allstate's alternative argument to stay, Defendant's confidence that *Duguid* will dispose of Plaintiffs' ATDS claim is based on a mischaracterization of either the issue before the Supreme Court or the allegations in the Complaint. *Duguid* may settle interpretation of the TCPA's autodialer definition, but Plaintiffs have made allegations consistent with a strict interpretation of the statute, and they will require discovery regardless of the Supreme Court's decision. The requested stay is not appropriate or supported by the *Landis* factors.

4

### A. Plaintiffs Have Pleaded Facts To Plausibly Suggest That The Calls From Allstate Were Made Using An ATDS.

Allstate begins its motion by asking the Court to dismiss Plaintiffs' first claim for relief, asserting that the Complaint is supposedly "without factual support" to "sustain or even understand the basis of" Plaintiffs' claims that the calls were made using an ATDS. (*See* Dkt. 18, at 2). But Defendant's argument ignores the factual allegations that give rise to the inference that the calls were automated. Plaintiffs cannot make specific, technical allegations about the dialing system without discovery, and they are not expected to do so. Instead, Plaintiffs have pleaded sufficient contextual facts about the calls to elevate their ATDS allegations above the speculative level—they have met their burden to survive a motion to dismiss.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *1 (N.D. Ill. Aug. 7, 2012) (internal citations omitted). In ruling on a motion to dismiss for failure to state a claim, "the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint." *Id.* (citing *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir.2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.2002)).

The TCPA prohibits the use of an automatic telephone dialing system to make texts or calls to consumer cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). With

5

regard to what is required at the motion to dismiss stage, the case law in this District is mixed—some cases suggest that reciting statutory language is enough, while others have required additional, independent facts to give rise to the inference that an ATDS was used. *See Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016). But even under the stricter approach, a TCPA plaintiff may describe "anything ... about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS." *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) (quoting *Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D.Ill. Dec. 18, 2012)). It is unreasonable to expect plaintiffs to make detailed, technical allegations because "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used" to place a call or text. *Sojka*, 35 F. Supp. 3d at 1002; *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012).

Thus, plaintiffs must generally rely on indirect allegations to plead the use of an ATDS, including details about the content of the messages or calls, context and manner in which they were sent, existence of similar calls, and frequency of calls. *Maier v. J.C. Penney Corp.*, No. 13CV0163-IEG DHB, 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013); *see also Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (finding that a plaintiff could describe the promotional content, the generic or impersonal nature of the messages, or the existence of identical messages sent to other potential customers to suggest the use of an ATDS); *Vaccaro v. CVS Pharmacy, Inc.*, No. 13-CV-174-IEG (RBB), 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (finding that the number of calls, the commercial nature of the calls, and the lack of a relationship between the parties support a reasonable inference of an ATDS). While additional factual details about the dialer at issue might be helpful, "further facts are not required to move

6

beyond the pleading stage." *Sojka*, 35 F. Supp. 3d at 1002 (quoting *In re Jiffy Lube Int'l, Inc.*, 847 F.Supp.2d 1253, 1260 (S.D. Cal. 2012)); see also *Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929 (D. Minn. 2020) ("Without discovery, Plaintiffs have no ability, beyond attempting to call the texting number and comparing text messages with one another, to determine the mechanics of the Trump Campaign's dialing machinery. Their allegations are plausible, and that is all that is required at this phase of litigation.")

Here, Plaintiffs have alleged enough facts to support a reasonable inference that the calls they received from Allstate, or agents on behalf of Allstate, were placed using an ATDS. While Plaintiffs do make direct allegations that an ATDS was used (*see* dkt. 1 at ¶¶ 20, 34, 45, 58), these are not "mere recital" or "bare allegation[s]," as Defendant would have the Court believe. (Dkt. 18 at 2.) Rather, these claims are supported by factual allegations relating to the content, context, and number of calls received. In total, Plaintiffs allege receipt of a total of eleven calls: five calls made to Garner and six made to Schick. (Dkt. 1 at ¶¶ 27–31, 37–42.) Four of the calls to Garner were made in a span of one week, and Schick received four calls to two of her phone numbers in one month—the number and frequency of calls makes the use of an ATDS more likely. (*Id.* at ¶¶ 27–30, 37–40.) Further, while the eleven calls were similar in nature by referring to Allstate's services, the calls came from at least nine different phone numbers. (*Id.* ¶¶ 27–31, 37–42.) Rather than an individual dialing and attempting to reach either Plaintiff, the variety of phone numbers—at least some of which could have been "spoofed" phone numbers—suggests automated telemarketing by Allstate or its agents on behalf of Allstate. Additionally, all eleven callers either stated that they were calling from Allstate or attempted to transfer the call to an Allstate representative, yet neither Plaintiff consented to the calls or had an existing relationship with Allstate that would justify these calls. (*Id.* ¶¶ 27–32, 37–43, 61); *see also Abbas v. Selling*

*Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (finding that the lack of "any reason to call [the plaintiff]'s number aside from telemarketing purposes" supported an ATDS allegation).

Despite having no relationship or reason to call Plaintiffs, Allstate called both Garner and Schick in a similar fashion and from a variety of phone numbers. These factual allegations support the claim, and permit the Court to reasonably infer, that the calls were made using an ATDS. Considering these factual allegations, Plaintiffs have met their burden to plausibly allege the use of an ATDS. Absent discovery, only Allstate truly knows how the calls were placed to Plaintiffs. *Sojka*, 35 F. Supp. 3d at 1002; *see also Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012) ("courts have noted 'the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery") Any further details about Allstate's dialing equipment must be obtained through discovery.

Defendant's Motion largely ignores Plaintiffs' factual allegations or asks the Court to impose a strict standard of what facts must be alleged. Allstate focuses heavily on the allegations that reflect the statutory elements and attempts to minimize the remaining, contextual allegations, going so far as to assert that Plaintiffs cannot support their ATDS claim without using the exact same facts that were accepted in *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704 (N.D. Ill. July 9, 2015). (*See* Dkt. 18 at 8) ("None of the facts that the court specifically laid out in *Martin* . . . are present in the Complaint."). However, and as Defendant notes, Martin is but "one decision in a line of case law" in this District that permits a plaintiff to support an ATDS claim with "anything . . . about the circumstances of a call." (*Id.* at 8); *Sojka*, 35 F. Supp. 3d at 1003. *Martin* does not contain a list of requirements, but examples of how an ATDS claim may be supported. Other examples include the calls' promotional content, the generic nature of the

8

calls, the existence of identical calls to other consumers, and the lack of an existing relationship—all of which Plaintiffs have alleged. *See Izsak*, 191 F. Supp. 3d at 904; *Sojka*, 35 F. Supp. 3d at 1002–03; *Abbas*, 2009 WL 4884471, at *3. The allegations related to the amount and frequency of calls, as well as their content and context, support a reasonable inference that Allstate or its agents used an ATDS.

In short, Defendant's arguments for dismissal overlook many of Plaintiffs' factual allegations and attempt to impose a heightened pleading requirement. Plaintiffs have met their burden to survive a motion to dismiss by alleging that Allstate used an ATDS and providing sufficient factual detail to raise their claim for relief above the speculative level. Accordingly, Defendant's partial motion to dismiss should be denied.

**B.     Allstate's Alternative Request To Stay Is Inappropriate Because A Ruling In *Duguid* Would Not Be "Dispositive" Of Plaintiffs' ATDS Claim.**

As an alternative to dismissal, Allstate asks the Court to stay the entire case pending the Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). (Dkt. 18 at 11–14.) While the Supreme Court's ruling could potentially alter the definition of an ATDS, it will not affect the foundation of Plaintiffs' ATDS claim[1]—no matter what is decided in *Duguid*, Plaintiffs will require discovery regarding the dialing technology used by Allstate, and Defendant cannot credibly demand delay of that discovery. Likewise, the *Landis* factors are unsupported—the requested stay would simply delay inevitable discovery and prejudice Plaintiffs' ability to obtain evidence. Allstate's alternative request should be rejected, and the Court should permit this matter to proceed to discovery.

---

[1] The *Duguid* decision will have no bearing whatsoever on Plaintiffs' DNC Registry Class claim, which does not depend on the use of an autodialer. (*See* Dkt. 1 at ¶¶ 48, 64–75.) Allstate advances no arguments as to why this claim should be stayed.

As Allstate outlines in its motion, at issue in *Duguid* is the statutory definition of an ATDS. The Ninth Circuit held in *Duguid* that an ATDS could be found where the dialing technology at issue is capable of storing numbers to be called and dialing such numbers automatically. *Duguid*, 926 F.3d at 1149–51. The Court rejected the notion that an ATDS must use a random or sequential number generator to store numbers. *Id.* The U.S. Supreme Court granted certiorari on July 9, 2020, for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

*See* Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019).

The Supreme Court will ultimately consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS. While a decision in either direction will certainly impact TCPA litigation and the legal definition of an autodialer, it will not dispose of Plaintiffs' claims or the requirement to demonstrate the use of an ATDS. Here, Plaintiffs alleged in the Complaint that Defendants used an ATDS, including "a random or sequential number generator." (Dkt. 1 at ¶¶ 20, 58.) Thus, if the Court answers its question affirmatively, Plaintiffs will no longer need evidence of such a number generator to prove that Allstate's dialing system qualifies as an ATDS. But no matter what is decided in *Duguid*, Plaintiffs must, through discovery, obtain evidence of the dialer that was actually used to make calls to themselves and the No Consent Class members. (*See* Dkt. 1 at ¶ 48.) Such evidence is in Defendant's possession, and it will be required regardless of what the Supreme Court decides. Allstate is seeking a stay that will only delay necessary and inevitable discovery.

Nevertheless, Allstate claims that the requested stay is supported by the factors applied by courts in this circuit. These factors are rooted in the Supreme Court's acknowledgement in *Landis* that courts have inherent power to control their own dockets, including the power to stay. *Id.* at 1109; *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In this Court, the factors have been identified as follows: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial," often referred to as judicial economy, "and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward" if there is "even a fair possibility that the stay . . . will work damage to someone else." *Id.* at 1007 (quoting *Landis*, 299 U.S. at 255); *see also Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954). Allstate's analysis of these factors is flawed—as explained below, none of the *Landis* factors favors the requested stay.

First, Allstate asserts that Plaintiffs won't be unduly harmed or tactically disadvantaged by a stay because argument in *Duguid* "will take place on December 8, 2020." (Dkt. 18, at 13.) But Defendant is asking to stay the case entirely until the Supreme Court reaches a decision in *Duguid*—Allstate does not suggest when this may be, but even if oral arguments are heard on December 8, a decision may not be rendered until as late as July 2021.[2] Generally, a delay that results from a stay can harm plaintiffs because it threatens the availability of evidence. *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir.

---

[2] *See Supreme Court Procedures*, UNITED STATES COURTS, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (last visited Oct. 5, 2020) ("All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer).")

2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Because the case is in its early stages, Defendant is effectively asking to stay all discovery for nearly a year. If Plaintiffs are unable to issue discovery or subpoenas to secure evidence possessed by Allstate and its agents for eight months, they will be tactically disadvantaged and prejudiced in their ability to support their claims. Further, every month that this matter is delayed is another month for Defendant to continue its automated telemarketing campaign unchecked and exacerbate the harms at issue in the case. Plaintiffs will be prejudiced if the case is stayed because they would be unable to even discover evidence material to their claims for eight months, during which time Defendant could continue its unlawful practices and cause more harm. The first factor weighs against granting a stay.

The second factor, judicial economy, likewise would not be served by a stay. Issues will not be simplified by postponing the case—rather, the ATDS issue will remain no matter what the Supreme Court decides. Defendant's arguments are premised on the mistaken belief that the *Duguid* decision will resolve a "dispositive issue in this case." (Dkt. 18 at 12.) This is simply not true. As explained above, Plaintiffs alleged the use of "a random or sequential number generator." (Dkt. 1 at ¶¶ 20, 58.) If the Supreme Court upholds the *Duguid* decision, Plaintiffs would no longer need specific evidence of a number generator to prove that the dialing system was an ATDS; if the decision is overturned, Plaintiffs will need such evidence. In either event, regardless of the Supreme Court's decision, Plaintiffs must obtain evidence of the dialing system that was actually used to make the calls at issue. *Duguid* cannot and will not dispose of Plaintiffs' ATDS claim because it is not predicated on allegations that Allstate's system merely dialed from a stored list. In response to a similar request in *Whittaker*, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be

12

required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit A"). The Court found that a stay pending *Duguid* would not simplify issues or serve judicial economy:

> As the parties explain, the result in *Facebook* [*v. Duguid*] is likely to determine whether Defendant's systems constituted ATDS. However, assuming the Court were to stay the case, once the Supreme Court releases its decision defining ATDS, Plaintiff still would be entitled to conduct discovery into Defendant's systems to determine whether those systems met the ATDS definition. In fact, Defendant has not pointed to a single discovery issue that would be eliminated by a *Facebook* decision favorable to it . . . . Because discovery issues are not likely to be mooted and resources are not likely to be spared, considerations of judicial economy do not favor a stay.

(Ex. A at 2.) The Northern District of California recently found the same in denying a motion to stay pending *Duguid*: "the nature of the system that Defendant used for making the alleged text messages will be an important issue for discovery in this action regardless of the [ATDS] definition." *Shultz v. TTAC Publishing, LLC*, No. 4:20-cv-04375-HSG, dkt. 23 at 9 (N.D. Cal. Oct. 26, 2020) (attached hereto as "Exhibit B"). The same holds true here—Allstate cannot credibly suggest that the *Duguid* decision will streamline or moot any discovery issues because: (1) Plaintiffs' allegations are not based solely on the use of a system that dials from a stored list of numbers; and (2) Plaintiffs will require discovery into Defendant's dialing system regardless of what the Supreme Court decides.

Similarly, granting a stay would not reduce the burden of litigation. The third factor considered whether proceeding with the case would cause the parties and the Court to "expend resources unnecessarily." *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *4 (N.D. Ill. May 29, 2014). Defendant suggests that "resources required to litigate this case on the merits will be wasted depending on the breadth to which the Supreme Court affords the ATDS issue." (Dkt. 18 at 13.) Once again, this prediction is rooted in Allstate's flawed assessment of the *Duguid* case and of Plaintiffs' claims. As explained above, Allstate is

13

seeking a stay that will only delay necessary and inevitable discovery—it will not be "burdened" by proceeding, aside from the ordinary expenses associated with litigation, which are certain and insufficient to justify postponing this matter for eight months. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'") A stay in this matter would not reduce the burden of litigation because, regardless of the *Duguid* decision, Plaintiffs will require discovery as to the dialing system used by Allstate—the "burden," as it were, would be the same now as it would be in eight months.

Put simply, there is no support for staying this matter until the Supreme Court issues its ruling in *Duguid* and postponing all proceedings. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. Allstate is asking that Plaintiffs' case be postponed for nearly a year on the erroneous belief that a shift in the statutory definition of an autodialer would dispose of Plaintiffs' ATDS claim. Delaying the entire case as requested would unduly prejudice and tactically disadvantage Plaintiffs in their ability to support their claims, and no issues or costs of litigation would be averted by postponing discovery. Defendant's alternative motion should be denied.

## IV.    CONCLUSION

Allstate's motion should be denied in its entirety. Plaintiffs have alleged sufficient factual details to permit a reasonable inference that the calls they received were made using an ATDS. Further, with regard to Defendant's alternative request to stay the case, the Supreme Court's upcoming review of the ATDS definition in *Duguid* will not be dispositive of Plaintiffs' ATDS claim, and the *Landis* factors do not support staying inevitable discovery and all proceedings in the case for up to eight months. Accordingly, the Court should deny the motion, permit the

14

parties to proceed, and award any such relief as it deems necessary and just.

Respectfully Submitted,

**BENJAMIN GARNER** and **DEBORAH SCHICK**, individually and on behalf of two Classes of similarly situated individuals

Dated: November 17, 2020   By: ___/s/ Steven L. Woodrow_____
                                            Counsel for Plaintiffs

Marc E. McCallister
mem@mccallisterlawgroup.com
Gary D. McCallister
gdm@mccallisterlawgroup.com
McCallister Law Group
200 North LaSalle Street, Suite 2150
Chicago, IL 60601
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

*\* Pro Hac Vice Admission to Be Sought*

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on November 17, 2020.

                                                  */s/ Steven L. Woodrow*