UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN GARNER AND DEBORAH SCHICK, individually and on behalf of all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, an Illinois Insurance Company, <br><br> Defendant. | Civil Action No.: 1:20-cv-04693 <br><br> Hon. John Z. Lee |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT IN LIGHT OF THE *FACEBOOK v. DUGUID* DECISION**

**I.     Introduction**

To hear Defendant Allstate tell it, the Supreme Court's recent decision in *Facebook v. Duguid,* 141 S. Ct. 1163 (2021) ("*Facebook*") dooms Plaintiffs' claims that Allstate violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") by utilizing an automatic telephone dialing system ("ATDS") to place unsolicited telemarketing calls. That is, by adopting a narrow definition of ATDS, the Supreme Court has supposedly foreclosed ATDS claims like the instant one.

Allstate's bid for dismissal is off-base and premature. First, the *Facebook* decision held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." 141 S. Ct. at 1167. Despite this, the record is devoid of any evidence—and Allstate has proffered none—regarding the

1

capacity of the dialer. Indeed, Plaintiffs still are without details or disclosures regarding the intricacies of Allstate's dialing equipment, including the mechanism(s) used to store, produce, and dial the telephone numbers. Put simply, discovery is needed to determine whether such equipment had the capacity to store or produce such numbers using a random or sequential number generator or to use a random number generator to determine the order in which to pick phone numbers from a preproduced list. 141 S. Ct. at 1172 n.7 (2021).

Seeking to dodge this entirely, Allstate claims that the pleadings are threadbare recitals (while also faulting Plaintiffs for not parroting the statute) and insists that discovery into its machinery is unwarranted because Plaintiffs should have pleaded greater detail in their initial complaint. This argument ignores both that no party knew at the time the initial pleading was filed just how the Supreme Court would interpret the meaning of an automatic dialing system and that Allstate's equipment may yet still qualify as an ATDS even under *Facebook's* purportedly restrictive reading.

As such, and as explained further below, the Court should deny Allstate's Motion to Dismiss and allow discovery into the capacity of Allstate's dialing system.

**II.      Factual and Procedural Background**

This case challenges calls that Allstate allegedly made in violation of the TCPA. (*See* Compl., dkt. 1 at ¶ 2.) Plaintiffs bring two causes of action on behalf of two distinct classes: a "No Consent Class" and a "DNC Registry Class." (*Id.* ¶ 48.) The No Consent Class consists of all persons called by Allstate using the same dialing equipment and for whom Defendant claims it obtained consent in the same manner as it may claim to have obtained consent to call Plaintiffs. (*Id.*) A key component of the No Consent Class's claim is that the dialing technology used by Allstate to make the calls qualifies as an ATDS as defined in the statute. (*See id.* ¶¶ 20, 58.) The

2

DNC Registry Class, on the other hand, is comprised of persons who were called at least twice after their phone number had been registered on the National DNC Registry for at least thirty days. (*Id.* ¶ 48.) The Complaint details multiple calls received by each plaintiff. (*Id.* ¶¶ 27–31.) Based on the number and frequency of calls, the variety of phone numbers, and the lack of any relationship with Allstate, Plaintiffs alleged that the calls were made using an ATDS. (*See id.* ¶¶ 20, 34, 45, 58.)

> On November 2, 2020 the Court entered the following deadlines:
>
> The parties are to exchange Rule 26(a)(1) disclosures by 11/20/20. Initial written discovery should be issued by 12/1/21. The deadline to amend pleadings and join parties is 2/19/21. The deadline for the competition of fact discovery is 8/23/21. The Court orders the parties to file a joint written status report by 1/7/21.

(Dkt. 23.) The Parties have exchanged Rule 26(a)(1) disclosures and have exchanged initial written discovery. No discovery has occurred regarding the capacity of Allstate's dialer. Allstate filed a partial motion to dismiss and to stay discovery dated October 19, 2020 (Dkt. 17.) Plaintiffs filed an Opposition (Dkt. 25), and Allstate filed its Reply (Dkt 27). Allstate claimed that the ATDS claims should be dismissed or, alternatively, stayed in light of the then-looming *Facebook* decision.

On April 1, 2021, the Supreme Court issued its decision in *Facebook*. This Court then entered a Minute Order stating:

> In light of the Supreme Court's decision in *Facebook, Inc. v. Duguid*, --- S. Ct. ----, No. 19-511, 2021 WL 1215717 (U.S. Apr. 1, 2021), the Court directs the parties to file supplemental briefs on the issue of how the Supreme Court's decision affects Defendant's pending motion to dismiss [17]. Each party's supplemental brief shall be limited to 8 pages. Defendant's supplemental brief is due by 4/16/21, and Plaintiffs' responsive supplemental brief is due by 4/30/21. Furthermore, the Court denies as moot Defendant's alternative motion to stay.

(Dkt. 36.) As explained below, the Court should allow Plaintiffs' DNC claims to proceed generally and allow the ATDS claims to move forward specifically with respect to discovery

3

limited to the issue of whether Allstate's dialer uses a random number generator to determine the order in which to pick phone numbers from a preproduced list and then stores those numbers to be dialed at a later time.

### III. Argument

#### A. Plaintiffs' Complaint set forth facts based on information available at the time it was filed and plausibly alleges that Allstate's equipment qualifies as an ATDS.

Allstate asserts that "[t]he relevant factual allegations in the Complaint are entirely conclusory." (Def. Br. at 1) Indeed, after reciting 7 paragraphs of the Complaint—three of which Allstate admits state point blank that it used an ATDS (Compl. ¶¶ 19, 34-35)—Defendant asserts that "Not a single one of these conclusory allegations – or any other allegation in the Complaint – supports a claim that an ATDS was used to place any of the calls to Plaintiffs. Each and every allegation is a bare assertion entirely devoid of facts." (Def. Br. at 3.) Allstate also focuses on Paragraph 20, which for convenience states:

> Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention.

(Compl. ¶ 20). Allstate claims that while this "come(s) close to defining an ATDS correctly, albeit without any factual allegations in support," the "second sentence of that same paragraph undermines the first sentence, however, because Plaintiffs go on to allege that the purported dialer is 'also known as a predictive dialer,' which is expressly not an ATDS as clarified in *Facebook*." (Def. Br. at 5.)

Allstate's argument fails. First, nowhere did *Facebook* hold that dialing equipment is

4

*precluded* from being considered an ATDS where it can make numerous calls simultaneously or automatically. Rather, it held only that such allegations, without additional pleadings regarding the capacity of the equipment to store or produce such numbers using a random or sequential number generator, are insufficient to prove an ATDS. As such, that the equipment may ultimately have some functionality akin to a predictive dialer doesn't legally foreclose a finding that the equipment meets the definition of an ATDS.

Second, Allstate reads the Complaint in a light most favorable to itself. Paragraph 20 doesn't simply state that the dialer was a predictive dialer—it pleads in the alternative, through the use of the phrase "or includes feature substantially similar to"—a predictive dialer. (Compl. ¶ 20.) Similarly, Allstate devotes much of its brief to faulting Plaintiffs for pleading "bare assertions", but ultimately its argument claims that Plaintiffs needed to include additional special terms making clear that the equipment "has the capacity to store or produce numbers using a random or sequential number generator."

Plaintiffs can amend to include such allegations, however, that would put the cart before the proverbial horse. At this point, the functionality of Allstate's dialer is solely within its peculiar knowledge and possession. As such, and as explained next, the Court should permit discovery into the capacity of Allstate's dialing equipment to the extent additional facts are required.

> **B.** **To the extent necessary, the Complaint can be amended following discovery regarding the capacity of the equipment used to make the calls at issue.**

Plaintiffs' are staring into a black box when it comes to the actual capacity of Allstate's dialer. Notwithstanding this, Allstate's position on discovery remains unchanged from its Reply brief filed pre-*Facebook* and consists solely of the following:

To the extent Plaintiffs suggest that they are entitled to discovery as to what was

5

> used to place the alleged calls, they are mistaken. As explained in Allstate's Reply, Plaintiffs cannot rely on future discovery to lessen or evade their pleading obligations as they are limited to the allegations set forth in the Complaint. Reply at 4 (citing cases).

(Def. Br. at 6.) Allstate seeks to have its cake and eat it too: it claims Plaintiffs must plead in exacting detail the functional capacity of a dialing system they haven't had an opportunity to inspect and that Plaintiffs can only inspect such equipment once they've plead the details. As explained in opposition to the Partial Motion to Dismiss, it is unreasonable to expect Plaintiffs to make detailed, technical allegations because "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used" to place a call or text. *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1002-03 (N.D. Ill. 2014) (*quoting Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D.Ill. Dec. 18, 2012)); *Torres v. National Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012).

Additionally, in staking out its position Allstate flatly ignores Footnote 7 of the *Facebook* decision, where the Supreme Court clarified that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." 141 S. Ct. 1163, 1172 n.7 (2021) (citations omitted). No pause on the line, toll-free phone number, or other circumstantial information can be used by Plaintiffs to show, pre-discovery, whether a random number generator is used to determine the order in which phone numbers are picked from a preproduced list. Discovery is plainly needed.

And at least two post-*Facebook* courts have agreed with this position. *See Bell v. Portfolio Recovery Assocs.,* Civil Action No. 5:18-cv-00243-OLG 2021 U.S. Dist. LEXIS 75096 (W.D. Tex. April 13, 2021); *Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-

6

CMA-MEH, 2021 WL 1291182 (D. Colo. Apr. 7, 2021). Using footnotes (ironically), the *Bell* court explained:

> For instance, it appears that the parties may now dispute the proper interpretation and scope of certain language in footnote 7 of the Facebook opinion, insofar as language in footnote 7 of the Facebook opinion might, according to Plaintiff-mean that certain devices constitute restricted autodialers under the TCPA if they "use a random generator to determine the order in which to pick phone numbers from a preproduced list." *See* 2021 WL 1215717, at *6 n.7. That issue was not the primary focus of the parties' prior briefing in this case, and the parties are welcome to brief the issue in their revised briefing.

*Bell,* Civil Action No. 5:18-cv-00243-OLG 2021 U.S. Dist. LEXIS 75096 n.4. In footnote 5, the *Bell* court further explains:

> To be clear, the fact that the Court is permitting additional discovery regarding the capabilities of the [predictive dialer] should not be interpreted as a signal that the Court has adopted Plaintiff's position regarding the proper interpretation of footnote 7 of the Facebook opinion. *See* generally docket no. 52. Indeed, it may be the case that Plaintiff has read too much into a single sentence in a footnote of an opinion that seemingly adopted the narrower of two proposed interpretations regarding the definition of a restricted autodialer under the TCPA. However, the Court believes that any resolution of dispositive motions in this case will almost certainly involve some analysis regarding the capabilities of the device in question, and thus, the Court believes that limited additional discovery regarding the extent to which the [dialer] uses a "random or sequential number generator" may be helpful irrespective of this Court's ultimate conclusion regarding the appropriate interpretation of any disputed language in the Facebook opinion.

*Id*. n.5.

Additionally, the *Montanez* court considered and rejected a motion to dismiss relating to the sufficiency of ATDS allegations post-*Facebook*. *See, e.g., Montanez*, No. 20-CV-02959-CMA-MEH, 2021 WL 1291182 (D. Colo. Apr. 7, 2021). There, as here, the defendant argued that plaintiff's ATDS allegations were "largely conclusory and rely heavily on the statutory language." *Id.* at *6. While the court agreed that *Facebook* provided clarity on the definition of an ATDS, the court disagreed that the decision was applicable to a motion to dismiss. *Id.* Rather, the *Montanez* court reasoned that the *Facebook* decision "will prove far more relevant on a

7

future motion for summary judgment than it does now." *Id.* Hence, *Facebook*'s applicability lies after a period of discovery, not before.

The same logic applies here. Limited discovery regarding the extent to which Allstate's dialer employs a random or sequential number generator—specifically whether it uses a random number generator to determine the order in which to pick phone numbers from a preproduced list and then stores those numbers to be dialed at a later time—is appropriate. As such, Plaintiffs request that with respect to the ATDS claims, the Court enter a schedule allowing discovery into the capacity of Allstate's dialer, namely the extent to which a random or sequential number generator is used, if any. Otherwise, Allstate—which doesn't even deny using an ATDS—will be allowed to keep secret the nature of its dialing equipment and avoid accountability, even though it may very well use a random or sequential number generator to pick phone numbers from a pre-produced list and would thus qualify as an ATDS under the TCPA.

**IV. Conclusion**

*Facebook* adopted a limited interpretation of ATDS, but it didn't foreclose all ATDS claims. Similar to the courts in *Bell* and *Montanez*, this Court should permit limited discovery into the functionality of Allstate's dialing equipment, specifically whether it uses a random number generator to determine the order in which to pick phone numbers from a preproduced list and then stores those numbers to be dialed at a later time.

WHEREFORE, Plaintiffs request that they be permitted to proceed with their DNC claims in full and, with respect to the ATDS claims, that they be granted leave to conduct limited discovery into the capacity of Allstate's dialer and for such additional relief as the Court deems reasonable and just.

Dated: April 30, 2021                 By:    /s/ Steven L. Woodrow

                                          One of Plaintiffs' Attorneys

Marc E. McCallister
mem@mccallisterlawgroup.com
McCallister Law Group
200 North LaSalle Street, Suite 2150
Chicago, IL 60601
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiffs and the Classes*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on April 30, 2021.

/s/ Steven L. Woodrow