IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN GARNER and DEBORAH SCHICK, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | No. 20 C 4693<br><br>Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

Despite having taken steps to prevent unsolicited telemarketing calls to their cellphones, Benjamin Garner and Deborah Schick (collectively, "Plaintiffs") each allegedly received numerous such calls from Allstate Insurance Company ("Allstate") or its agents in 2019. Based on these calls, Plaintiffs assert two counts against Allstate under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of themselves and all other similarly situated individuals. Count I alleges that Allstate violated the TCPA by making numerous unauthorized calls to Plaintiffs' cellphones using an automatic telephone dialing system ("ATDS"). Count II alleges that Allstate violated the TCPA by repeatedly calling Plaintiffs' cellphones after they had registered their phone numbers on the National Do-Not-Call ("DNC") Registry. Now before the Court is Allstate's motion to dismiss Count I for failure to state a claim. For the following reasons, the motion is denied.

I. **Background**[1]

This case arises from a series of telemarketing calls that Plaintiffs received from or on behalf of Allstate in 2019. Compl. ¶¶ 2–3, 7, ECF No. 1. Plaintiffs are individuals who have no established business relationship with Allstate, never gave Allstate permission to call their cellphones, and even placed their phone numbers on the National DNC Registry to prevent solicitation calls years ago. *Id.* ¶¶ 26, 32, 35, 43, 61. Nonetheless, Allstate (or its agents) called Plaintiffs' cellphones a combined total of eleven times between June and December of 2019. *Id.* ¶¶ 27–31, 37–42. The purpose of the calls was to advertise Allstate's insurance policies. *Id.* ¶ 60. In addition to themselves, Plaintiffs allege that Allstate made telemarketing calls to other similarly situated individuals as well. *Id.* ¶¶ 57, 69.

Garner, a resident of Pearland, Texas, received five calls from Allstate between June and July of 2019. *Id.* ¶¶ 8, 27–31. Garner received the first three calls from phone numbers bearing the area code "817" and the last two calls from phone numbers bearing the area code "214." *Id.* ¶¶ 27–31. The area codes "817" and "214" are affiliated with Northern Texas and Dallas, Texas, respectively.[2]

Schick resides in Scottsdale, Arizona. *Id.* ¶ 9. She received six calls from phone numbers bearing the area code "925," which is associated with Northern

---

[1] The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] The Court takes judicial notice of the geographic regions associated with the area codes alleged in Plaintiffs' class action complaint as matters of public record. *See, e.g., Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (stating that the judicial notice doctrine "allow[s] courts to avoid unnecessary proceedings" over "an undisputed fact in the public record").

California, between August and December of 2019. *Id.* ¶¶ 37–42. The first caller indicated to Schick that he or she was calling from Allstate, *id.* ¶ 37, and the five subsequent callers either transferred or attempted to transfer Schick to Allstate, *id.* ¶¶ 38–42. On one occasion, the caller asked Schick if she was interested in obtaining insurance from Allstate before transferring the call. *Id.* ¶ 41.

Plaintiffs filed this action on behalf of themselves and two putative classes of similarly situated individuals in August 2020.[3] Their class action complaint brings two counts against Allstate under the TCPA. Count I alleges that Allstate violated the statute by calling Plaintiffs' cellphones and the cellphones of other putative class members without their prior express consent by means of an ATDS. Compl. ¶¶ 56–63; *see* 47 U.S.C. § 227(b)(1)(A)(iii). Count II alleges that Allstate violated the statute by calling Plaintiffs and other putative class members whose numbers were on the National DNC Registry and by failing to abide by relevant telemarketing regulations. Compl. ¶¶ 64–75; *see* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200.

At this juncture, Allstate moves to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Partial Mot. Dismiss or Stay, ECF No. 17.[4]

---

[3] The "No Consent Class" consists of all persons "(1) to whom Allstate (or an agent acting on behalf of Allstate) made calls, (2) to the person's cellphone number, (3) using the same equipment that was used to call the Plaintiffs, and (4) for whom [Allstate] claims it obtained prior express consent in the same manner as [Allstate] claims it supposedly obtained prior express consent to call the Plaintiffs." Compl. ¶ 48. The "DNC Registry Class" includes all persons called by Allstate at least twice after their phone number had been registered on the National DNC Registry for at least thirty days. *Id.*

[4] The Court previously denied Allstate's alternative motion to stay as moot after the Supreme Court issued its decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), on which the motion to stay was premised. *See* 4/1/21 Min. Entry, ECF No. 36.

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

## III.   Analysis

Allstate argues that Count I fails to allege a violation of the TCPA for two related reasons. First, Allstate contends that Plaintiffs have not pleaded facts sufficient to allow the Court to draw a reasonable inference that Allstate made the alleged calls using an ATDS. Second, Allstate argues that Plaintiffs' descriptions of its alleged dialing system do not meet the definition of an ATDS.

4

To state a claim under the TCPA, a plaintiff must allege that the defendant made a call to their phone using an ATDS. 47 U.S.C. § 227(b). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook*, 141 S. Ct. at 1167; *accord Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020), *cert. denied*, --- S. Ct. ----, No. 20-209, 2021 WL 1521010 (Mem.) (U.S. Apr. 19, 2021) (holding "that the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced'").[5]

As to its first argument, Allstate contends that the complaint merely parrots the statutory language of the TCPA, without including factual allegations sufficient to infer that Allstate actually used an ATDS to place the challenged calls. As this Court observed in a recent case, courts in this district have adopted differing views of what it takes to allege use of an ATDS. *Zeidel v. Nat'l Gas & Elec., LLC*, No. 18 C 6792, 2019 WL 2161546, at *3 (N.D. Ill. May 17, 2019). On the one hand, a few courts have found that the complaint need only allege that the defendant used an ATDS as defined by the TCPA, without offering any supporting facts. *See Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (Der-Yeghiayan, J.); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999,

---

[5] Although the Supreme Court's decision in *Facebook* came down while Allstate's motion to dismiss was pending, the Seventh Circuit had adopted the same definition of an 'automatic telephone dialing system' before Plaintiffs filed this action. *See Facebook*, 141 S. Ct. at 1168 n.4 (acknowledging that *Gadelhak* is consistent with the Supreme Court's holding); *id.* at 1173 (Alito, J., concurring in the judgment) (same).

5

1010–11 (N.D. Ill. 2010) (St. Eve, J.). In so holding, these courts have reasoned that "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used" by the defendant. *Torres*, 2012 WL 3245520, at *3.

On the other hand, most courts in this district have held that merely reciting the statutory definition of an ATDS is not enough to survive a Rule 12(b)(6) motion. *See Hayes v. Receivables Performance Mgmt., LLC*, No. 17 C 1239, 2018 WL 4616309, at *7, (N.D. Ill. Sept. 26, 2018) (Dow, J.); *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (Wood, J.); *Serban v. CarGurus Inc.*, No. 16 C 2531, 2016 WL 4709077, at *3–4 (N.D. Ill. Sept. 8, 2016) (Ellis, J.); *Schlotfeldt v. Wells Fargo Home Mortg., Inc.*, No. 15 C 6656, 2016 WL 406341, at *4–5 (N.D. Ill. Feb 3, 2016) (Gettleman, J.); *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (Leinenweber, J.); *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) (Alonso, J.); *Oliver v. DirecTV, LLC*, No. 14 C 7794, 2015 WL 1727251, at *2 (N.D. Ill. Apr. 13, 2015) (Zagel, J.); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 984 (N.D. Ill. 2013) (Castillo, J.); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (Aspen, J.); *Abbas v. Selling Source, LLC*, No. 09 C 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (Gottschall, J.). Instead, these courts require a plaintiff to allege enough facts to "allow a plausible inference" that the defendant in fact used an ATDS. *E.g.*, *Martin*, 2015 WL 418704, at *2. For instance, a plaintiff may allege that the calls came from an institutional sender and were for

6

purely telemarketing purposes, *Abbas*, 2009 WL 4884471, at *3; that the voice on the other line sounded robotic, *Ananthapadmanabhan*, 2015 WL 8780579, at *4; that the plaintiff heard a distinctive "click and pause" before being connected to an operator, *Schlotfeldt*, 2016 WL 406341, at *5; or "anything else about the circumstances of the call" that suggests the use of an ATDS, *Martin*, 2015 WL 4148704, at *2.

In *Zeidel*, this Court held that the complaint satisfied either standard because it alleged sufficient details about the content and nature of the calls to raise a reasonable inference that the defendant used an ATDS. 2019 WL 2161546, at *3. Specifically, the complaint alleged that the plaintiff received "numerous" unsolicited telemarketing calls made for promotional purposes and placed from two different "spoofed" phone numbers.[6] *Id*.

Likewise here, the allegations are similarly sufficient to allow the reasonable inference that Allstate used an ATDS. For starters, Plaintiffs allege that they each received numerous unsolicited calls from Allstate or its agents within the span of just six months, even though their phone numbers were on the National DNC Registry. These eleven calls came from nine different phone numbers, and each call bore the area code of a geographic region relatively near to each Plaintiff's place of residence. Thus, while Plaintiffs do not explicitly allege that Allstate used "spoofed" phone numbers, this Court may infer that at least some of the caller numbers were selected "to obscure or misrepresent the geographic and actual identity of the caller so as [to] induce the call recipient to answer his phone." See *Spiegel v. Carlson*, No. 15 C 1809,

---

[6] "'Spoofing' refers to the deliberate falsification of caller identification information in order to disguise the caller's identity." *Zeidel*, 2019 WL 2161546, at *1 n.2.

7

2016 WL 5477529, at *6 (N.D. Ill. Sept. 29, 2016) (explaining the purpose of "spoofing" caller identification information when using an ATDS).

Furthermore, the calls were generic in nature and served to market Allstate's insurance policies to Plaintiffs, who had no prior business relationship with Allstate. As a result, "there is no indication that [Allstate] had any reason to call [Plaintiffs'] phone number[s] aside from telemarketing purposes." *See Abbas*, 2009 WL 4884471, at *3. Viewed in the light most favorable to Plaintiffs, as they must be at this juncture, these allegations plausibly allege that Allstate used an ATDS.

The cases cited by Allstate do not suggest otherwise. Relying on *Martin*, Allstate contends that Count I fails to allege use of an ATDS because Plaintiffs do not allege any of the signs typically associated with an ATDS, such as a robotic sounding voice, a lack of human response, or a distinctive "click and pause" sound upon answering the call. *See* 2015 WL 4148704, at *2. But *Martin* also recognizes that a plaintiff may point to "anything else about the circumstances of the call that led him to believe that it was made with an ATDS." *Id.*

Allstate's other cases similarly recognize that a plaintiff may sufficiently allege the use of an ATDS by pointing to any pertinent circumstances surrounding the call. *See, e.g.*, *Ananthapadmanabhan*, 2015 WL 8780579, at *4; *Johansen*, 2012 WL 6590551, at *3. Consequently, these cases do not purport to provide a comprehensive list of boxes a plaintiff must check. Instead, they merely address examples of factual allegations that "raise a right to relief above the speculative level," while explicitly leaving room for *other* such allegations. *See Twombly*, 550 U.S. at 555. Here, as

8

explained above, Plaintiffs have alleged sufficient facts about the content, context, and number of the unsolicited telemarketing calls they received from Allstate to permit the reasonable inference that Allstate used an ATDS.

Next, Allstate argues that Plaintiffs' allegations describing the nature of its dialing system are inconsistent with the definition of an ATDS that the Seventh Circuit articulated in *Gadelhak* and the Supreme Court adopted in *Facebook*. In the complaint, Plaintiffs allege that Allstate made calls using "an ATDS." Compl. ¶¶ 19, 34, 45, 59. They also allege that Allstate's dialing system "had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention." *Id.* ¶ 58. Allstate rightly concedes that this description of an ATDS is consistent with *Gadelhak* and *Facebook*. Nonetheless, Allstate asserts that Plaintiffs' allegation that such a dialing system is "also known as a predictive dialer" defeats the sufficiency of this description because the TCPA does not necessarily encompass predictive dialers. *See id.*; *see also id.* ¶ 20. The Court disagrees.

As the Court observed in *Zeidel*, "[p]redictive dialers include a wide variety of devices, some of which do not qualify as an ATDS under the TCPA because they lack the capacity to randomly or sequentially generate numbers to dial." 2019 WL 2161546, at *3. Importantly, however, "the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call." *Id.* at *4. Rather, "[s]uch a determination requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff

9

lacks prior to discovery." *Id.* As result, "a plaintiff need not provide specific, technical details" about the predictive dialer at issue "at the pleading stage." *Id.* (collecting cases). Indeed, courts in this district have come to a consensus that a plaintiff "should not be expected to plead details regarding the technical functionality of the alleged ATDS." *Izsak*, 191 F. Supp. 3d at 904; *accord Ananthapadmanabhan*, 2015 WL 8780579, at *4; *Torres*, 2012 WL 3245520, at *3; *Johansen*, 2012 WL 6590551, at *3; *see also Vance v. Bureau of Collection Recovery LLC*, No. 10 C 6324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) (drawing a reasonable inference that the defendant used an ATDS from the terms "predictive dialers" and "autodialed"). Allstate provides no persuasive reason to depart from this approach here.

Accordingly, the allegations of Count I allow the reasonable inference that Allstate made the challenged calls using an ATDS within the meaning of the TCPA.

### IV. Conclusion

For the foregoing reasons, Allstate's motion to dismiss Count I is denied.

**IT IS SO ORDERED.**          **ENTERED: 8/30/21**

                                                                    _/s/ John Z. Lee_

                                                                    **John Z. Lee**
                                                                    **United States District Judge**